228 So.2d 300 (1969)
Juan GARCIA, a/K/a Johnny Garcia, Appellant,
v.
STATE of Florida, Appellee.
No. 68-1130.
District Court of Appeal of Florida. Third District.
November 25, 1969.
*301 Barry N. Semet, Miami, for appellant.
Earl Faircloth, Atty. Gen., Arden M. Siegendorf and Melvin Grossman, Asst, Attys. Gen., for appellee.
Before CHARLES CARROLL, BARKDULL and SWANN, JJ.

ON REHEARING
PER CURIAM.
Following hearing on this appeal by the defendant below from an order of the trial court summarily denying his motion filed under Rule 1.850 CrPR for relief from a conviction and life sentence, consequent upon his plea of guilty to an indictment for rape, this court entered an order of reversal. A timely petition for rehearing filed by the state was granted, and argument thereon was heard. After further consideration we recede from our prior order of reversal and hold that the order of the trial court denying the defendant's motion for relief should be affirmed. Accordingly, this court's opinion and judgment filed September 30, 1969, is vacated and withdrawn, and this opinion and judgment of affirmance is substituted.
When arraigned on the indictment, the defendant pleaded not guilty and not guilty by reason of insanity, but when the case came on for trial, defendant's counsel announced to the court that the defendant desired to change his plea to one of guilty. At that point the defendant was examined fully with respect thereto, in the course of which it was adequately shown that his plea of guilty was knowingly and voluntarily made, and in a substantial measure such was confirmed by his employed attorney. Because of the importance of this showing in the record, as refuting the allegations of the defendant's subsequent motion for relief under Rule 1.850, it is set forth here, as follows:
"Mr. Carricarte: [Assistant State Attorney] Yes.
"The Court: Is the defendant ready to proceed?
"Mr. Carlton: [Defendant's Attorney] Yes, Your Honor.
"May it please the Court, at this time the defendant tenders a plea of guilty as charged in the indictment.
"The Court: Before I accept your plea the Court and the State may make certain inquiry in regard thereto. The State may inquire if they wish.
* * * * * *
"Mr. Carricarte: Are you the Juan Garcia, also known as Johnny Garcia, who has been charged by this indictment with the crime of rape of one Carmen P. Enfinger on July 2, 1967?
"Mr. Garcia: Yes, sir.
"Mr. Carricarte: Sir, are you represented by Mr. Philip Carlton, Jr.?
"Mr. Garcia: Yes, sir.
"Mr. Carricarte: Is he your attorney, and has he been your attorney from the time of the preliminary hearing to the present time?
"Mr. Garcia: Yes, sir.
"Mr. Carricarte: Did you hear Mr. Carlton offer a plea of guilty on your behalf to the charge of rape as charged in the indictment?
"Mr. Garcia: No, sir.

*302 "Mr. Carricarte; Did you hear Mr. Carlton just now say that you were pleading guilty to the charge of rape?
"Mr. Garcia: Yes, sir.
"Mr. Carricarte: Is it your desire to plead guilty to the charge of rape?
"Mr. Garcia: Yes, sir.
"Mr. Carricarte: Of Carmen P. Enfinger as charged?
"Mr. Garcia: Yes, sir.
"Mr. Carricarte: Did you enter this plea of guilty to the charge of rape of Carmen P. Enfinger freely and voluntarily?
"Mr. Garcia: Yes, sir.
"Mr. Carricarte: Did anyone threaten you in any way 
"Mr. Garcia: No, sir.
"Mr. Carricarte: [Continuing]  or force you to plead guilty to the charge?
"Mr. Garcia: No, sir.
"Mr. Carricarte: Did anyone promise you any kind of special consideration to cause you to plead guilty to the charge of rape?
"Mr. Garcia: No, sir.
"Mr. Carricarte: Do you understand the significance of a plea of guilty to the charge of rape and possible consequence of the plea guilty to the charge of rape?
"Mr. Garcia: No, sir.
"Mr. Carricarte: Do you understand, sir, that as a result of your plea of guilty to the charge of rape the Court may sentence you to death in the electric chair or life imprisonment or to a term for years?
"Mr. Garcia: Yes, sir.
"Mr. Carricarte: Have you had an opportunity to discuss this case to your satisfaction with your attorney, Mr. Carlton?
"Mr. Garcia: Yes, sir.
"Mr. Carricarte: Are you satisfied with the legal service, advice and counsel Mr. Philip Carlton, Jr., has given you in connection with this case?
"Mr. Garcia: Yes, sir.
"Mr. Carricarte: Sir, are you pleading guilty to the charge of rape of Carmen P. Enfinger on July 2, 1967 because you are guilty of such rape and for no other reason?
"Mr. Garcia: Yes, sir.
"Mr. Carricarte: Do you understand, sir, that under the laws of the State of Florida you have a right to a speedy trial by a jury of 12 men in the event that you want a trial in this case, but once you plead guilty you are giving up that right to a trial by jury?
"Mr. Garcia: Yes.
"Mr. Carricarte: Has anyone whomsoever, the police, the defense attorney, the State Attorney's Office, promised you any kind of special consideration for changing your plea from not guilty to guilty?
"Mr. Garcia: No, sir.
"Mr. Carricarte: The State is satisfied, Your Honor.
"The Court: Do you have any questions?
"Mr. Carlton: No, sir.
"The Court: How old ar you?
"Mr. Garcia: Twenty.
"The Court: Twenty?
"Mr. Garcia: Yes.
"The Court: Are you married?
"Mr. Garcia: No, sir.
"The Court: Do you have any children?
"Mr. Garcia: Yes, sir.

*303 "The Court: How many?
"Mr. Garcia: One.
"The Court: How much education have you had?
"Mr. Garcia: I went to the tenth grade, sir. * * *
* * * * * *
"The Court: Is your father the man who has been in the courtroom this morning?
"Mr. Garcia: Yes.
"The Court: Is your mother in the courtroom?
"Mr. Garcia: Yes. sir.
* * * * * *
"The Court: Mr. Carlton, as counsel for the defendant and as an officer of this Court, can you assure the Court you have investigated your client's case and have fully and completely advised him as to his rights and defenses?
"Mr. Carlton: I have investigated this thoroughly, and I have advised him to the utmost of every aspect of this case, and the consequences either with a jury or without a jury or a plea, sir.
"The Court: The Court finds that you, Juan Garcia, also known as Johnny Garcia, are an alert and able and intelligent person, and you have had the advice and benefit of Mr. Carlton, an attorney at law and admitted to practice before this Court, who is well able and qualified to represent you in this case, and he has represented many such defendants in these type of cases before this Court and other Courts of this circuit and other judges of this circuit. You understand the nature of the charge brought against you and the defenses available to you, and that your decision to plead guilty is made freely and voluntarily of your own free will and accord. The plea of guilty is accepted.
"Anything further?
"Mr. Carricarte: The state at this time, in support of the plea of guilty, would offer into evidence the transcript of the preliminary hearings taken in the State of Florida versus Juan Garcia on July 18, 1967 at 2:30 o'clock p.m. * * *
* * * * * *
"The Court: Any objection?
"Mr. Carlton: No objection, Your Honor.
"The Court: Admitted. Was this filed in the other case?
"Mr. Carlton: No, this is the duplicate, Your Honor.
"The Court: Yes.
"Mr. Carricarte: Those were Barry Garber's copies.
"The Court: * * * Anything further to come before the Court at this time?
"Mr. Carricarte: Not at this time.
"Mr. Carlton: Not at this time.
"The Court: I am going to order a presentence investigation. I am going to set sentence a week from this coming Friday, which would be the 29th."
Thereafter, at a hearing set by the court, the adjudication of guilt was entered and a life sentence was imposed.[1] On that occasion there was no objection to the life sentence, nor was there any attempt to recede from the guilty plea because of the nature of the sentence.
The motion for relief filed some months later alleged that contrary to what the defendant had stated at the time he pled *304 guilty, his plea was not free and voluntary, but was made because he had been told by his (privately employed) attorney that the latter had an understanding with the prosecutor that if he pled guilty the sentence imposed would be twenty years, but that otherwise the prosecutor would seek a death penalty; that his attorney had informed him that upon being questioned by the court he should not reveal such promise, and had coached him as to the answers he should give to questions put to him in court regarding his change of plea.
While not contending that the motion on its face failed to state a prima facie ground for relief, the state contends that the trial court was correct in holding that the matter relied on in the motion was conclusively refuted by the record. See Rule 1.850 CrPR. With that contention of the state, this court agrees.[2]
The case of Brumley v. State, Fla.App. 1969, 224 So.2d 447, relied on by the appellant, is distinguishable from the present case, not only on the facts (where that case involved a question of the plea having been coerced by threats), but because of the limited inquiry as to voluntariness of the plea as disclosed in the opinion, compared to the extensive and thorough inquiry regarding the matter of voluntariness which was made in the trial court in the present case. See Edwards v. State, Fla.App. 1969, 221 So.2d 446. By his motion for relief the defendant attempts now to repudiate and avoid the effect of his statements to the court made under oath as to the voluntariness of his guilty plea, and the statements and representations made to the court on that occasion by his attorney. The latter, by remaining silent when his client informed the court under oath that his plea was voluntary and that no promises had been made, and by stating that he had fully advised the defendant on the penalties which could result from his plea, can be regarded as having certified to the court the verity of the defendant's statements under oath in those respects.
A searching inquiry as to voluntariness of a guilty plea at the time it is offered is the most reliable and efficient means of determining whether the defendant fully understands his rights and the nature of the commitment which the plea connotes, as to the charge against him and the consequences of entering a guilty plea. Thus, a defendant who may have been informed by his attorney that an agreement had been made between his attorney and the prosecutor that a certain sentence less than the maximum would result from the plea, upon being advised by the court, as this defendant was, that the plea may result in a more severe sentence, was then in a position to *305 re-evaluate the advisability of entering such plea. Therefore, a guilty plea entered in the face of such information from the court as to the possible consequences thereof is not necessarily involuntary even if, as alleged here, a defendant had understood the prosecutor had agreed with his attorney that the plea would bring about a lesser sentence. See United States v. Mancusi, D.C.E.D.N.Y. 1967, 275 F. Supp. 508, 518-519. The defendant's motion for relief did not allege that the trial judge was aware of, or a party to any such agreement for a lighter sentence. The import of the inquiry as to voluntariness of the plea at the time it was entered was to the contrary as far as the court was concerned. Compare Richardson v. State, Fla.App. 1967, 202 So.2d 137.
In the face of the clear showing of voluntariness of the plea, in the record of proceedings at the time the plea was entered, the subsequent bare allegations by the defendant in contradiction thereof in his motion under Rule 1.850 CrPR were properly considered by the trial court to be conclusively refuted by the record.
Affirmed.
NOTES
[1] By § 794.01 Fla.Stats., F.S.A., the punishment prescribed for the crime of rape is death, unless a majority of the jury in their verdict recommend mercy, in which event the punishment is life imprisonment or imprisoment for any term of years within the discretion of the judge.
[2] In the order denying the motion the trial court stated:

"5. That the defendant's contention that his plea of guilty was involuntary because he was promised a specific sentence by his defense counsel, Philip Carlton, Jr., Esq., is completely contradicted by the record of questions propounded to the defendant by the Assistant State Attorney and by the Court as to the freeness and voluntariness of the plea of guilty as reflected on Pages 12 through 21 of the attached transcript of said proceeding dated March 18, 1968. The defendant answered these questions under oath in open court with his mother and family present and clearly stated on Page 16 of said record that no one whomsoever, including the defense attorney, had promised him any kind of special consideration for changing his plea from not guilty to guilty. There is no indication that the Defendant was in any way misled or misinformed by his defense counsel in order to have him change his plea. At no time did the State make any representation to the defendant or his counsel as to what his sentence might be if he pled guilty.
"6. That the defendant's contention that he would not have pled guilty if he had been advised that his plea of guilty might result in a life sentence is wholly without merit because Page 15 of the transcript of the proceeding of March 18, 1968, reflects that the defendant, under oath, stated to this Court that he understood that as a result of his plea of guilty to the charge of rape that the Court may sentence him to death in the electric chair or life imprisonment or to a term for years."