689 So.2d 235 (1996)
STATE of Florida, Petitioner,
v.
Paul LEROUX, Respondent.
No. 86052.
Supreme Court of Florida.
December 19, 1996.
Rehearing Denied March 11, 1997.
Robert A. Butterworth, Attorney General; and Joan Fowler, Senior Assistant Attorney General and William A. Spillias, Assistant Attorney General, West Palm Beach, for Petitioner.
Bernard F. Daley, Jr. of Daley & Associates, Tallahassee, for Respondent.
PER CURIAM.
We have for review Leroux v. State, 656 So.2d 558 (Fla. 4th DCA 1995), based upon conflict with the opinions in Pierce v. State, 318 So.2d 501 (Fla. 1st DCA 1975), and Garcia v. State, 228 So.2d 300 (Fla. 3d DCA 1969). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. We approve the district court's holding.
Paul Leroux pled guilty to second-degree murder with a firearm, pursuant to a negotiated plea with the State, and was sentenced to fifteen years' imprisonment with a three-year minimum mandatory sentence. Leroux did not directly appeal his conviction, but filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Leroux alleged that he entered his guilty plea based upon trial counsel's advice that he would actually be released from prison in four years because of his entitlement to provisional gain time credits. After his incarceration, Leroux was informed by the Department of Corrections that his counsel's advice was erroneous and he would have to serve over seven years before being released.
Leroux's motion for postconviction relief asserted that counsel's advice as to the estimated time of Leroux's release constituted ineffective assistance of counsel. In its response, the State argued that Leroux's claim was conclusively refuted by the transcript of the plea colloquy where Leroux stated that he freely and voluntarily entered the plea and that no one had either threatened him or *236 promised him anything to enter the plea.[1] The trial court agreed and summarily denied the motion.
On appeal, the Fourth District Court of Appeal reversed and remanded for an evidentiary hearing. Leroux, 656 So.2d at 558. The district court's opinion focused on the fact that the plea colloquy did not conclusively refute Leroux's claim that his negotiated plea was a product of trial counsel's alleged erroneous advice concerning the time that Leroux would actually serve and his eligibility for gain time. Id. at 558-59.
We accepted jurisdiction of this case on the basis of conflict with the opinions in Pierce and Garcia. In the conflict cases, the defendants sought relief from their convictions based upon the argument that their guilty pleas were not freely and voluntarily made but were induced by promises or coercion by trial counsel. Pierce, 318 So.2d at 501; Garcia, 228 So.2d at 304. In each case, the district court concluded that the claim was refuted by the record which revealed a specific inquiry by the trial court as to whether any promises or threats had been made to the defendant to induce the guilty plea. Pierce, 318 So.2d at 502; Garcia, 228 So.2d at 304-05. Neither case, however, involved allegations of miscalculations or advice of counsel as to the amount of time a defendant would serve, and both cases are arguably distinguishable on their facts.
Misrepresentations by counsel as to the length of a sentence or eligibility for gain time can be the basis for postconviction relief in the form of leave to withdraw a guilty plea. Thompson v. State, 351 So.2d 701 (Fla. 1977), cert. denied, 435 U.S. 998, 98 S.Ct. 1653, 56 L.Ed.2d 88 (1978). However, under the express provisions of rule 3.850, relief may be summarily denied where the record conclusively refutes such a claim. See Rackley v. State, 571 So.2d 533, 535 (Fla. 1st DCA 1990)(finding that claims of coercion or ineffective assistance of counsel can be refuted by oral statements to the contrary as reflected in the transcript of a sentencing hearing or by written statements to the contrary contained in a negotiated plea).
Leroux cites a number of district court opinions as supporting the district court's conclusion in the instant case. See, e.g., Perez v. State, 605 So.2d 163 (Fla. 2d DCA 1992) (finding that plea colloquy attached to trial court's order denying relief did not conclusively refute defendant's claim that counsel gave erroneous advice as to eligibility for parole); Bell v. State, 602 So.2d 693 (Fla. 2d DCA 1992)(finding record insufficient to conclusively refute defendant's claim that his plea was involuntary by virtue of counsel's advice regarding parole and gain-time credits). The cited cases support the proposition that counsel's erroneous advice regarding the length of sentence or eligibility for gain time or early release can be the basis for postconviction relief. However, they do not address the precise issue posed by this case, namely whether a defendant's negative response to the trial court's question of whether anything was promised to the *237 defendant to induce a plea can conclusively refute a claim based upon counsel's erroneous advice.
This Court and all of the district courts have long recognized that a defendant may be entitled to withdraw a plea entered in reliance upon his attorney's mistaken advice about sentencing. Two decisions from the Second District are particularly illustrative. In Trenary v. State, 453 So.2d 1132 (Fla. 2d DCA 1984), relying expressly upon this Court's prior holdings, the district court held:
The law is well settled that if a defendant enters a plea in reasonable reliance on his attorney's advice, which in turn was based on the attorney's honest mistake or misunderstanding, the defendant should be allowed to withdraw his plea. Costello v. State, 260 So.2d 198 (Fla.1972); Brown v. State, 245 So.2d 41 (Fla.1971). Although the record reflects a sufficient basis to find that an actual mistake or misunderstanding existed, we think this issue would be best determined by the trial court after testimony from, but not limited to, defendant and his trial attorney.
Id. at 1133-34. Subsequently, in Simmons v. State, 611 So.2d 1250, 1251 (Fla. 2d DCA 1992), the court acknowledged its consistent holdings that "a defendant may be entitled to withdraw his plea if he establishes that he was misled [by counsel] about the possible effect of gain time."
These cases recognize the proposition that a defendant invariably relies upon the expert advice of counsel concerning sentencing in agreeing to plead guilty. In addition, "there may be a difference between asking a defendant whether anything was promised to get the defendant to agree to a plea, and asking whether any additional promises were made to the defendant concerning the terms of the plea apart from those discussed during the taking of the plea." Leroux v. State, 656 So.2d 558, 559-60 (Fla. 4th DCA 1995)(Stone, J., dissenting). We agree, and acknowledge that there may also be a difference between a "promise" as commonly understood, and an attorney's expert advice to his client based upon the attorney's computation and estimate of the actual amount of time a defendant may serve on a sentence. Supplying such advice is not necessarily a promise of an outcome. Rather, providing such advice is a legitimate and essential part of the lawyer's professional responsibility to his client in most plea negotiations, where often the bottom line for the defendant is the amount of time he will serve.
Rule 3.850 explicitly requires that the record "conclusively" rebut an otherwise cognizable claim if it is to be denied without a hearing. Here, we must agree with the district court that it cannot be said that respondent's allegations of the misadvice of counsel are "conclusively" rebutted by the plea colloquy. While the plea colloquy may appear to be some evidence contrary to defendant's claim, it is not so clear or so inconsistent with the claim so as to "conclusively" rebut it. On the other hand, were it to be made clear to a defendant at the time the plea was entered that he could not rely on anyone's estimated computation of the time the defendant would actually serve, then such a defendant would have no basis to complain later. That is the practice the district courts have urged upon the trial courts in accepting pleas.
In Carmichael v. State, 631 So.2d 346, 347-48, (Fla. 2d DCA 1994), Judge Lazzara, writing for a unanimous court, stated:
We again reiterate that "a trial court is always well-advised, when accepting a plea, to ascertain whether any promises were made to the defendant apart from those discussed during the plea colloquy." Simmons v. State, 611 So.2d 1250, 1253 (Fla. 2d DCA 1992)(emphasis in original). It would be a simple matter during the plea dialogue to have the defendant affirm under oath that no one, especially the defendant's counsel, has made any promises concerning eligibility for any form of early release authorized by law and the actual amount of time to be served under the sentence to be imposed. It would also be beneficial to have the defendant further acknowledge the absence of such promises in a written plea form, if one is routinely used by the judge.
Although we are not holding that such an inquiry is required, see Dolan v. State, 618 So.2d 271, 273 n. 2 (Fla. 2d DCA 1993), such a procedure would add little to the *238 burdens of the trial bench and would hopefully result in facilitating summary disposition of this type of case at the trial and appellate levels. A defendant who has initially acknowledged under oath that no such promises have been made will generally be estopped at a later time to claim otherwise. Simmons, 611 So.2d at 1253. See also Colon v. State, 595 So.2d 271 (Fla. 2d DCA 1992)(transcript of plea colloquy in which defendant denied any promises apart from plea agreement sufficient to refute claim that counsel promised a more lenient sentence). Additionally, in an appropriate case, such a defendant may face the sanctions of contempt or perjury. E.g., Thomas v. State, 210 So.2d 488 (Fla. 2d DCA 1968).
A defendant who is informed by the court during the plea colloquy that he may have to serve every day of a ten-year sentence could hardly reasonably rely on counsel's advice to the contrary. But, if that matter was not discussed when the plea was taken, a hearing would be necessary to determine the merits of a defendant's claim that he relied in good faith upon the erroneous advice of his attorney in entering a plea. Trenary; Simmons. It is only when the record "conclusively" establishes that the defendant did not rely on the advice of counsel that a summary adjudication will be proper.
Accordingly, we approve the Fourth District's decision on review.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW and ANSTEAD, JJ., concur.
HARDING, J., dissents with an opinion, in which GRIMES and WELLS, JJ., concur.
HARDING, Judge, dissenting.
I respectfully dissent. The majority's conclusion that the plea colloquy did not refute Leroux's claim that his negotiated plea was involuntary is wrong. When the trial court asked Leroux whether anyone had promised him anything to either persuade or coerce him to enter a guilty plea, Leroux answered "no." I find this unequivocal negative response to the court's inquiry sufficient to refute Leroux's subsequent claim that his plea was involuntary by virtue of counsel's misrepresentations regarding the length of time to be served on the proposed sentence. In the face of such record evidence, I believe that the trial court properly denied postconviction relief without an evidentiary hearing. To rule otherwise would thwart the purposes for the plea colloquy between the court and the defendant, that is, to ensure that the defendant fully understands the consequences of the plea and voluntarily enters the plea. See Fla. R.Crim. P. 3.172(c); Williams v. State, 316 So.2d 267, 271 (Fla. 1975). Where a defendant responds under oath to the court's inquiry by stating that he or she understands the consequences of the plea, has neither been threatened nor "promised... anything" to enter the plea, and enters the plea voluntarily, the defendant should generally be estopped from later arguing a position contrary to those sworn statements. See Simmons v. State, 611 So.2d 1250, 1253 (Fla. 2d DCA 1992).
The majority's conclusion to the contrary damages the doctrine of finality and places an undue burden on the trial court to come up with the right combination of "magic words." I believe that inquiry as to whether anyone promised the defendant anything to enter the plea includes promises or representations by counsel as to the amount of time that the defendant would serve. Would the majority require the judge to replace the all-inclusive pronoun "anyone" with a laundrylist of all persons who might have made promises or threats to the defendant?
Moreover, the majority reaches a conclusion without reason by finding that the conflict cases of Pierce v. State, 318 So.2d 501 (Fla. 1st DCA 1975), and Garcia v. State, 228 So.2d 300 (Fla. 3d DCA 1969), are "arguably distinguishable on their facts." Majority op. at 236. The majority states that Pierce and Garcia did not involve "allegations of miscalculations or advice of counsel as to the amount of time a defendant would serve." Majority op. at 236. However, these cases involved almost identical circumstances as the instant case.
When Garcia entered a guilty plea to the charge of rape, he told the court that no one *239 had threatened or forced him to plead guilty to the charge, nor had anyone promised him any kind of special consideration that caused him to plead guilty. Garcia, 228 So.2d at 302. Garcia subsequently filed a motion for postconviction relief, alleging that his plea was not voluntary because counsel had advised him that he had an understanding with the prosecutor that Garcia would receive a twenty-year sentence if he pled guilty, but the state would seek the death penalty otherwise.[2]Id. at 303-04. After the trial court summarily denied his motion, the Third District Court of Appeal concluded that Garcia's claim was "conclusively refuted by the record" of the plea colloquy. Id. at 305.
While Pierce does not include a recitation of the plea colloquy, the opinion states that Pierce sought to have his convictions overturned because "his plea was induced by coercion and promises made to him by his court-appointed counsel." 318 So.2d at 501. The First District Court of Appeal concluded that Pierce's allegations were completely unsupported by the record because he specifically told the court that no promises had been made to him and he had not been pressured or coerced into pleading guilty. Id. at 502.
Thus, I find the facts in Pierce and Garcia to be on all fours with the instant case and in direct conflict with the district court's decision here. Because the majority is approving the decision below, I believe that they must necessarily disapprove the opinions in the conflict cases. Otherwise, the majority will add even greater confusion to the law than the decision they reach in this case.
GRIMES and WELLS, JJ., concur.
NOTES
[1] The following exchange occurred during the colloquy preceding the plea:

THE COURT: Mr. Leroux, in Case Number 91-8504 you're charged in Count I with second degree murder. Your attorney on your behalf has negotiated a plea agreement with the State, and I want to tell you what it is and then ask you some questions to determine whether or not this plea is acceptable to the Court, and the disposition as recommended by the State is acceptable to the Court.
You are charged in this case with second degree murder with a firearm, a life felony. The negotiated plea is this: That if you plead guilty to that charge, there will be no presentence investigation. The Court would adjudicate you to be guilty of that charge and sentence you to 15 years incarceration in the Department of Corrections with a minimum mandatory three years. You would be given credit for 79 days that you served.
Is that your understanding of the plea?
THE DEFENDANT: Yes, sir.
THE COURT: Is it your wish to enter a plea of guilty to that charge?
THE DEFENDANT: Yes, sir.
THE COURT: Are you pleading guilty freely and voluntarily?
THE DEFENDANT: Yes, sir.
THE COURT: Are you pleading guilty because you are guilty?
THE DEFENDANT: Yes, sir.
THE COURT: Has anyone threatened you?
THE DEFENDANT: No, sir.
THE COURT: Or promised you anything to get you to do that?
THE DEFENDANT: No, sir.
[2] At the time that Garcia entered his plea, the punishment for rape was death, unless a majority of the jury recommended mercy. See § 794.01, Fla. Stat. (1967).